UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FLORENCE M. MONROE,

            Plaintiff,

   v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

           Defendant.

Case No. 2:17-cv-01225-RJB

ORDER DENYING PLAINTIFF'S MOTION TO VACATE AND REMAND, OR, IN THE ALTERATIVE, TO REVERSE AND REMAND

Plaintiff Florence M. Monroe seeks review of the denial of her application for supplemental security income and disability insurance benefits. Dkt. 13. As discussed below, Plaintiff's motion should be DENIED and the Court should AFFIRM Defendant Commissioner Nancy A. Berryhill's ("the Commissioner") final administrative decision.

**BACKGROUND**

Plaintiff filed for SSI and disability benefits on October 25, 2013, alleging a disability onset date of April 15, 2005. Administrative Record ("AR") 798. Plaintiff appealed a "no disability" decision by the Administrative Law Judge ("ALJ") to the United States District Court, which reversed and remanded for further proceedings. AR 886-896. After an evidentiary hearing on August 8, 2016, the ALJ issued a second "no disability" decision, finding at Step Four that Plaintiff was capable of performing past relevant work. AR 798-811. The evidentiary hearing

included testimony from Plaintiff and a Vocational Expert ("VE"). AR 822-52. The Social Security Appeals Council affirmed the ALJ decision. AR 783-789.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, 20 C.F.R. § 416.920, the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since April 15, 2005, the alleged onset date. AR 800.

**Step two:** Plaintiff has the following severe impairments: degenerative disc disease and status-post cervical fusion; asthma; diabetes; and hypertension. AR 801.

**Step three:** Plaintiff's impairments do not meet or equal the requirements under 20 C.F.R. Part 404, Subpart P, Appendix 1 of a listed impairment. AR 804.

**Residual Functioning Capacity ("RFC"):** Plaintiff has the RFC "to perform light work . . . with some exceptions. [Plaintiff] can stand or walk for approximately six hours, and sit for approximately six hours, per eight hour work day with normal breaks. She can frequently climb ramps or stairs but never climb ladders ropes or scaffolds. The claimant can frequently stoop, kneel or crouch. She can occasionally crawl. [Plaintiff] can <u>frequently handle and reach with the left upper extremity</u> and unlimited with the right, except she can have only occasional overhead reaching. [Plaintiff] should avoid concentrated exposure to extreme cold, extreme heat, and excessive vibration and workplace hazards[.]" AR 805 (emphasis added).

**Step four:** Plaintiff is capable of performing "past relevant work as a broadcast checker, [which] does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity." AR 810.

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005), citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of

the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

Plaintiff has raised two errors, quoted verbatim and discussed herein.

**1. The ALJ failed to comply with prior Remand Order and did not provide clear and convincing or even specific and legitimate reasons for rejecting medical opinions and ignoring objective evidence of Plaintiff's left arm limitations.**

This argument centers on the ALJ finding about Plaintiff's left upper extremity, *see* Dkt. 13, 17, where the ALJ found that Plaintiff "can <u>frequently</u> handle and reach with the left upper extremity and unlimited with the right, except she can have only occasional overhead reaching." AR 805 (emphasis added). Plaintiff assigns this error first to Dr. Howard Platter, then to Dr. Janine Shaw, ARNP Tim Pearson, Dr. Roger Sharf, and Dr. Bruce MacKay.

    a. <u>Dr. Howard Platter</u>

The second ALJ decision mentions Dr. Platter in one paragraph, which reads:

> I give significant weight with some exceptions to the opinions of Dr. Howard Platter, Dr. John Coker, Dr. David Millett and Dr. Santosh Kumar . . . as they are generally consistent with the claimant's physical examination findings and objective evidence, including the evidence that shows the claimant has not developed radiculopathy or atrophy in the upper extremities. Her shoulder range of motion is within functional limits. However, I find that based on the claimant's *physical examination findings,*

ORDER - 3

> *the lack of treatment or complaints related to her left upper extremity, and her activities*, she can frequently handle and reach with the left, except only overhead reaching occasionally.

AR 808 (italics added). The prior ALJ decision contains an identical paragraph, except for the above italicized phrase, which instead states that the ALJ based her decision on "the claimant's symptoms[.]" AR 30. *See* AR 808. The United States District Court in part reversed the prior ALJ decision for erroneously "determining that the medical evidence did not support the limitation to occasional [not frequent] handling and reaching . . . found by Dr. Platter[.]" Dkt. 11-9 at 39.

Plaintiff argues that the second ALJ decision did not fix the problem identified in the first ALJ decision, because the second decision again rejected Dr. Platter's "occasional handling" conclusion without specific and legitimate rationale and without substantial evidentiary support. Dkt. 13 at 6.

Although the second ALJ decision only modified one phrase in the Dr. Platter paragraph, the change made improves the rationale's specificity. *See* AR 30, 808. The first ALJ decision cited to "the claimant's symptoms" when rejecting Dr. Platter's finding of occasional handling, whereas the second ALJ decision cites three specific reasons, "physical examination findings, the lack of treatment or complaints . . . and [Plaintiff's] activities[.]" AR 30, 808. The second ALJ decision is sufficiently specific.

Next, the legitimacy and support in the record should be examined for each of the three reasons cited, (1) physical examination findings, (2) lack of treatment or complaints, and (3) Plaintiff's activities. Plaintiff disputes their legitimacy, citing counter-examples that Plaintiff maintains better represent the record as a whole. Dkt. 13 at 6-9.

    1. *Physical examination findings*.

The second ALJ decision references or discusses multiple physical examination findings, citing to the record for each: intact gait, electromyography (EMG) tests with "normal" or "minimal" findings, the lack of radiculopathy, and no atrophy. AR 806, 807. Examining the citations relied upon by the ALJ for each physical examination finding reveals sufficient support in the record:

- **"Intact gait"**— AR 359 ("She can perform a toe/heel gait," Oct. 2, 2007, Dr. David Millett and Dr. Linda Miller); AR 695 ("Gait is normal," Aug. 21, 2014, Dr. Nathan Morrow). *See also*, AR 378 ("able to walk without an antalgic gait," Sept. 21, 2009, Dr. Barrett); AR 1195 ("normal gait," May 2, 2016, Dr. Roger Sharf).

- **"EMG tests with normal or minimal findings,"** and **"Plaintiff has not developed radiculopathy"**—AR 327 ("EMG test in . . . bilateral arm muscles showed normal findings," Oct. 2, 2007, Dr. Santosh Kumar); AR 556 ("some evidence of mild, chronic cervical radicular changes, though it is not obvious this would account for her [Upper Extremity] pain and parasthesias . . . out of proportion," and "In the lower extremities there is no evidence of a lumbo-scral radiculopathy as . . cause of her [Left Lower Extremity] weakness," Sept. 24, 2013, Dr. Niles Roberts). *See also*, AR 362 ("I agree entirely with the findings of Dr. Kumar based on normal EMG/nerve conduction studies of her upper and lower extremities," Oct. 2, 2007, Dr. David Millett); AR 1193 ("EMG/MCV left upper and left lower extremities [*sic*] Dr. Roberts: No explanation for left lower extremity weakness [*sic*] mild chronic multilevel radiculopathy evidence left upper extremity," May 2, 2016, Dr. Roger Sharf). ***But compare to***, AR 556

> ("[Left Upper Extremity] EMGs show . . . mild chronic multilevel radiculopathy," Sept. 24, 2013, Dr. Niles Roberts).
>
> - **"Atrophy in the upper extremities"**— AR 554 ("No atrophy appreciated in the bilateral hands," Sept. 24 2013, Dr. Niles Roberts). *See also*, AR 1195 ("No muscle fasciculation or atrophy noted anywhere," May 2, 2016, Dr. Roger Sharf).

Although Plaintiff has identified conflicting evidence for these physical examination findings, the ALJ's physical examination findings are substantially supported by the record and are legitimate.

### 2. *Lack of treatment or complaints.*

The second ALJ decision expands on the lack of treatment or complaints finding in two separate paragraphs, which, somewhat redundantly, state:

> Recent medical evidence demonstrates little to no complaints or treating related to the claimant's upper extremities. For examples [*sic*], even when suggesting she had ongoing pain in her left upper extremity and left lower extremity during medical appointments, [she] did not seek treatment for such complaints (*see e.g.*, 23F2).
> . . .
>
> The medical evidence of record demonstrate very few complaints related to the claimant's allegations of left sided weakness. For example, over the course of several appointments in 2015 and 2016, the claimant did not seek any treatment related to her allegations of several limitations in her left upper extremity (*see e.g.* 28F, 30F).

AR 807-08.

The ALJ citations to the record—23F2, 28F, and 30F—show that Plaintiff complained of—but was not necessarily treated for—left upper extremity pain, or that Plaintiff visited a provider for another purpose. The first citation, 23F2 (AR 777), medical notes from Plaintiff's April 29, 2015 visit to Dr. Roger Sharf, documents Plaintiff's report of "Positive for limb pain (left upper extremity pain; left leg pain)." *Id*. The next citation, 28F (AR 1193 *et seq*.), medical notes from a May 2, 2016 visit to Dr. Sharf, documents complaints by Plaintiff of arm pain. AR

1193 ("She's experiencing some pain and weakness in her left extremities"), AR 1195 ("chronic pain a physiologic explanation [*sic*] has not been found to explain pain and weakness of the left side of her body[.]" The last citation, 30F (AR 1222), documents Plaintiff's visit to a provider for the purpose of addressing Plaintiff's right heel pain. AR 1222 ("[Plaintiff] is here in consultation from Roger Sharf, MD, for evaluation of bilateral foot pains."). Therefore, the finding that Plaintiff failed to complain of arm pain is not legitimate and is not supported by the record, but the lack of treatment finding should be affirmed.

3. *Plaintiff's activities.*

The second ALJ decision expands on the Plaintiff's activities finding in a separate paragraph:

> I note that reaching and handling are required to perform all basic activities of daily living including eating, brushing teeth, using a telephone, opening a door, drinking coffee, and so on. If an individual was limited to only occasional reaching and/or handling, it would mean after a total of only two and half hours . . . the individual would be completely unable to use their arms and hands for the remaining five and half hours of the day . . . Yet during the relevant period the claimant has engaged in many activities . . . including, for example driving, grocery shopping, light gardening, preparing meals, applying make-up, and performing normal activities of daily living such as brushing her teeth. A limitation to only occasional handling is an extreme limitation, which is not supported by the provider's records, by the longitudinal records, or by the claimant's actual activities.

AR 809.

The ALJ finding about Plaintiff's activities is legitimate and supported by substantial evidence. *See, e.g.,* AR 374, 573, 824-827, 833, 834, 847, 848. Plaintiff attacks this finding on two grounds, arguing first that the finding is too general, because the ALJ failed to point to activities that Plaintiff, who is right-hand dominant, performed for a substantial part of her day with her left hand. Dkt. 13 at 13. Plaintiff's first argument fails to account for questions asked of Plaintiff by the ALJ at the August 31, 2016 remand hearing, where the ALJ asked Plaintiff

questions about daily living activities that Plaintiff sustains by using her right hand, which is her dominant hand. AR 824-827, 833, 834, 847, 848. Although Plaintiff may prefer inferences to be made in her favor, Plaintiff's testimony supports the ALJ finding. Plaintiff's second argument takes issue with the ALJ's use of the word "extreme," when referring to "occasional handling . . . limitation." This focuses on a stray word in the opinion with no bearing on the underlying ALJ finding.

        4. *Summary.*

When rejecting Dr. Platter's finding of "occasional handling" in favor of "frequent handling," the ALJ provided three reasons, all of which are specific. One of the reasons, Plaintiff's lack of treatment or complaints, is not legitimate and lacks support in the record as to the lack of complaints finding. The other two reasons, physical examination findings and Plaintiff's activities, are legitimate and find significant, albeit sometimes contradicted, support in the record. On the whole then, the ALJ rejection of Dr. Platter's occasional finding in favor of a frequent handling finding is specific and legitimate, and supported by the record.

      b. <u>Dr. Janine Shaw, ARNP Tim Pearson, Dr. Roger Sharf, and Dr. Bruce MacKay</u>

The second ALJ decision directly mentions Dr. Janine Shaw, ARNP Tim Pearson, and Dr. Roger Sharf in one paragraph:

> I give little weight to the opinions of Dr. Janine Shaw, Dr. Smith, [ARNP] Tim Pearson, and *Dr. Roger Sharf* . . . as they are not supported by the objective evidence and rely heavily on the claimant's subjective complaints. For instance, the EMG and nerve conduction tests have not demonstrated radiculopathy. The claimant has not developed atrophy in the upper extremities. Her gait is intact. Deep tendon reflexes are normal. She has normal sensation in the upper extremities. *These opinions are also inconsistent with the minimal physical examination findings and the lack of observations of the claimant presenting in any distress at medical appointments, as discussed earlier in this opinion.*

AR 809 (italics added). The first ALJ decision contains a paragraph identical to the above,

except for the above italicized portions. AR 30. *See* AR 809. The United States District Court in part reversed the first ALJ decision for erroneously failing to explain why the objective evidence she relied upon deserved greater weight than the objective evidence of Dr. Shaw and ARNP Pearson. Dkt. 11-9 at 40, 41.

Plaintiff argues that the "ALJ's reasons for rejecting the treating physicians' opinions in November 2016 cannot be considered valid since they are exactly the same as the May 2015 reasons which the Court already determined invalid." Dkt. 13 at 15. *See* Dkt. 11-9 at 40, 41. Plaintiff is incorrect, because although both decisions contain similar paragraphs, the second ALJ decision adds two reasons for rejecting the providers. The first reason, Plaintiff's failure to "present[] in any distress at medical appointments," is neither legitimate nor supported by the record, as discussed above. *See* §1(a)(2) ("lack of treatment or complaints").

The second reason, however, inconsistent physical examination findings, is specific and legitimate, and it finds support in the record, as discussed above. *See* §1(a)(1). The paragraph citing inconsistent physical examination findings does not itself expand on the findings, but, as discussed above, *see* §1(a)(1), the decision elsewhere expands upon them. For example, the next paragraph of the second ALJ decision, which is not found in the first ALJ decision, states:

> The form completed by [ARNP] Mr. Pearson and Dr. Smith in 2014 suggesting the claimant meets the listing requirements of 1.04 [per se disability] is given no weight (16F). This opinion is inconsistent with the physical examination findings discussed above that demonstrated no motor loss . . . Moreover, there is no evidence of muscle atrophy. Finally, they do not provide any basis or support for the suggestion the claimant meets these criteria.

AR 809. The second ALJ decision sufficiently points to and supports rejection of the opinions of Dr. Shaw, ARNP Pearson, and Dr. Sharf.

The decision makes no explicit mention of Dr. Bruce MacKay. *See* AR 798-811. Plaintiff does not argue for an assignment of error particular to Dr. MacKay, where Plaintiff notes in

ORDER - 9

parentheses, "In neither decision has the ALJ given any reasons to discount or reject Dr. MacKay's 2007 or 2008 assessments and opinions, discussed above[.]" Dkt. 13 at 15, ln. 5. Dr. MacKay's examination informed Dr. Shaw's opinion, *see* AR 709 ("cc: Janine Shaw MD"), and the second ALJ decision rejected Dr. Shaw's opinion with specific and legitimate reasons, substantiated by the record. *See above*. Any error by the second ALJ opinion for the failure to address (and reject) Dr. MacKay's opinion would therefore be harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

Plaintiff's first assignment of error fails as to Dr. Platter, as well as Dr. Shaw, ARNP Pearson, Dr. Sharf, and Dr. MacKay.

**2. The ALJ again failed to properly consider Plaintiff's RFC, and erred in finding against at step five that Plaintiff can perform her past relevant work (findings the Court already determined are erroneous).**

As a threshold matter, Plaintiff's argument is improperly raised as a challenge to the second ALJ decision's determination at Step Five. Assessing Plaintiff's RFC for past relevant work is a determination at Step Four. 20 C.F.R. § 416.920(a)(4)(iv) ("At the fourth step, we consider our assessment of your [RFC] and your past relevant work.")

Plaintiff argues for error where the ALJ determined that Plaintiff can perform past relevant work as a Broadcast Checker, because the hypothetical presented "does not accurately describe Plaintiff's reaching and handling limitations with the left hand, and the job requires 'frequent' reaching." Dkt. 13 at 16. This assignment of error stems from the same determination about Plaintiff's frequent, versus occasional, use of the left upper extremity, an issue addressed above.

Plaintiff argues that the ALJ erred by failing to explain its rejection of Dr. Santosh Kumar's opinion that Plaintiff should avoid work with "frequent excessive bending or twisting in

her neck and back." Dkt. 13 at 17. *See* AR 346-52, 805. As Defendant points out, however, Plaintiff failed to meet her burden to show that the job of Broadcast Checker required frequent excessive bending or twisting, especially given that (1) Plaintiff's testimony changed about the job's duties, and (2) the Vocational Expert found the job to be sedentary. Dkt. 16 at 12. *See* AR 66-68, 810. Plaintiff's second assignment of error also fails.

\* \* \*

Neither one of Plaintiff's two primary arguments raises reversible error. The ALJ decision should be affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED**. Plaintiff's Motion to Vacate and Remand, or, in the Alternative, to Reverse and Remand (Dkt. 13) is **HEREBY DENIED**.

DATED this 20th day of March, 2018.

*[signature]*

ROBERT J. BRYAN
United States District Judge